

KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

March 8, 2022

<u>BY ECF</u>
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *United States v. Kermit Irizzary, a/k/a "Kerm,"* 17 Cr. 142 (RA)

Dear Judge Abrams:

    Kermit Irizzary is before this Court for sentencing on a violation of supervised release (VOSR) after having been sentenced to an 84-month prison term on January 10, 2022 for the same conduct forming the basis of his VOSR. For the following reasons, the defense respectfully requests that this Court impose either a concurrent term of incarceration on the VOSR, which it may do notwithstanding the policy statements in the United States Sentencing Guidelines, or impose a modest portion of any sentence to run consecutive to the 84-month period Mr. Irizzary is already facing.

    **1.  Original Offense Conduct and Sentence**

    In 2019, this Court sentenced Mr. Irizzary for his role in a racketeering conspiracy. ECF 421. When weighing an appropriate sentence, this Court took into account the seriousness of the offense conduct as well as the mitigating factors, including his youth, the length of his incarceration in state custody, his social and personal history and his family support. ECF 430 at 22-24. One thing that could not be captured in that original sentence was the time that Mr. Irizarry had already fully served a sentence for a state-court robbery conviction that formed a basis for the conduct underlying the original federal offense. ECF 417 at 5, fn 6. In other words, Mr. Irizarry did, in a sense, serve more than the recommended term for the original federal offense conduct by: first, serving a full term for it in state custody; and, then, having it counted toward his federal sentence, both with the conduct as an underlying act for purposes of the offense level calculation and the fact of the conviction as contributing to his criminal history score. *Id.*

    Ultimately, this Court imposed a sentence of 33-months in prison to run concurrent with the remainder of a 60-month sentence that Mr. Irizzary was already serving for possession of a weapon in New York State custody – conduct that formed a basis for the federal racketeering case. ECF 417 at 4. Given the state prison term preceding the original federal sentence, by the

March 8, 2022
Page 2

time his term on the original federal charge was completed, Mr. Irizzary at age 25 had spent one-quarter of his life in prison.  While certainly disappointing, perhaps given this, it is not a complete surprise that his transition out of custody was not without problems.

### 2. New Federal Charge and Sentence

On January 19, 2021, Mr. Irizzary was arrested for a violation of 18 U.S.C. § 922(g). *U.S. v. Irizzary*, 21-cr-60 (S.D.N.Y.) (MKV).  He was charged with being a person previously convicted of a felony offense who possessed ammunition. *Id.*, ECF 5.  He pleaded guilty to that charge on October 1, 2021. *Id.* at ECF 27.  The government had stated in a *Pimentel* letter that its calculation of the Sentencing Guidelines range, assuming a three-point reduction for acceptance of responsibility, was 77 to 96 months. *Id.*, ECF 31 at 3.  The defense did not object to that calculation, but did note that the range was largely driven by Mr. Irizzary's criminal history, much of which dated to before he turned 18 years old. *Id.*, ECF 30 at 2 fn 1.

At sentencing, relying largely on the offense conduct – which, as described by the government, included the discharge of a weapon – the Court in the new matter imposed a mid-Guidelines sentence of 84-months in custody. *See* Sentencing Tr. at 19-21.

### 3. Current VOSR

Mr. Irizarry was released from federal custody on February 14, 2020 with an expiration date for supervised release of February 13, 2023.  On November 25, 2020, the Probation Department submitted a petition for violation of supervised release, which it amended following the arrest on the new charge.  On February 8, 2022, Mr. Irizarry admitted to the facts underlying specification six of the VOSR, which is the same offense conduct as that underling the new federal charge and sentence.

### 4. A Concurrent Prison Term or Modest Period of Consecutive Incarceration Would be Sufficient but Not Greater Than Necessary to Accomplish the Goals of a VOSR Sentence

As the Court no doubt recalls from the original case, Mr. Irizzary's life has been marked by hardship and bad choices.  He originally grew up in the Bronx in a violent public housing project.  While Mr. Irizzary's mother for a short time relocated the family to Massachusetts, where a young Kermit Irizzary thrived, the family returned to the Bronx and the violence, crime and gangs of his original home. The violence – to which Mr. Irizzary has acknowledged he contributed – was inescapable, and blinded some to the very role they played in perpetuating it.  Following the murder by gunshot of his best friend in 2014, Mr. Irizzary saw the weapon as both a means of self-protection and avengement for his friend's death.  His possession of ammunition here and his prior possession of a firearm are, to say the least, seriously concerning – but they were not motivated solely by an interest in harming others and, fortunately, did not result in physical harm to others.

March 8, 2022
Page 3

  In any event, the underlying offense conduct, especially when already addressed by a new criminal sentence, is not and should not be the primary consideration in fashioning a punishment for a VOSR. As expressly set forth in the statute governing VOSR sentences, 18 U.S.C. § 3583 (e), the only 18 U.S.C. § 3553(a) sentencing factor that cannot be considered is the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

  Indeed, this is the reason behind the Sentencing Guidelines policy statement and non-binding statement that "[a]ny term of imprisonment imposed upon the revocation of … supervised release shall be ordered to be served consecutively to any sentence of imprisonment the defendant is serving," even if such term "resulted from the conduct that is the basis of the revocation of … supervised release." U.S.S.G. § 7B1.3(f). As the Second Circuit has explained, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *United States v. Sweeney*, 90 F.3d 55, 57 (2d Cir. 1996); *see also* U.S.S.G. Ch. 7, Pt. A (Introduction) (primary goal of a sentence for a VOSR is the "defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."); *United States v. Gonzalez*, 634 F. App'x 15, 18 (2d Cir. 2015); *United States v. Sindima*, 488 F.3d 81 (2d Cir. 2007). Thus, to the extent this Court relies on the nature of the underlying VOSR conduct, that is an argument in favor of running any VOSR sentence concurrent to the existing 84-month term.

  As for the breach of trust here, the Probation Department's recommendation of the statutory maximum for a Grade B violation (which is two-times as long as the low end of the Guidelines-recommended term) is largely driven by the facts underlying his new arrest which, the Probation Department argues, "is clear evidence that he is a risk to the community, and he cannot be safely supervised." *See* Amended VOSR at 7. Even if those statements are true, it is that risk and that danger that were captured by the existing 84-month sentence for the new charges and that is outside the scope of the VOSR sentencing statute. As the Sentencing Guidelines explain, any new term of incarceration on the VOSR must be primarily premised on the breach of trust reflected by the violation to which Mr. Irizzary has admitted, *not* the seriousness of the offense or just punishment concerns.

  With respect to the other sentencing factors that must inform this Court's imposition of any term of incarceration on Mr. Irizzary – whether run concurrent or consecutive – his history and characteristics remain largely the same as at the original sentencing and the sentencing on the new matter. His youth and background were and remain factors contributing to his bad choices; his family remains at the ready to welcome him home (with several family members traveling from Florida solely to appear at his sentencing hearing on the new case and confirm that they continue to support Mr. Irizzary); any rehabilitative needs will be adequately served by the existing 84-month term (with any additional period of time not meaningfully providing further opportunity for rehabilitation); and any services that the Bureau of Prisons can provide for educational, vocational or other ends will not be more available if Mr. Irizzary were to serve time beyond that 84-month term.

March 8, 2022
Page 4

      Further, to the extent any VOSR sentence will run consecutive to the seven-years Mr. Irizzary will be serving on the new charges, the theory undergirding consecutive terms weighs in favor of a modest consecutive sentence.  Here, Mr. Irizzary is already facing a long term in prison.  Any additional punishment for breach of trust should not add substantially to the existing term – which, at its end (even without additional time for the VOSR), will mean that Mr. Irizzary will have spent about 14 nearly uninterrupted years in prison, between the ages of 18 and 32.  The current 84-month sentence will, alone, adequately address the breach of trust represented by the new arrest and any time run concurrent to that should be short.

**5. Conclusion**

      For all of the foregoing reasons, we respectfully request that this Court impose a sentence on the VOSR that is below or at the low-end of the recommended Guidelines range, and that it consider running some or all of that sentence concurrent with the existing 84-month term.

                                                  Respectfully,

                                                  /s/ Megan W. Benett

cc:     All counsel of record via ECF/CM